HERRICK, FEINSTEIN LLP
*Proposed Attorneys for the Debtor and*
*Debtor-in-Possession*
Joshua J. Angel
Frederick E. Schmidt, Jr.
Hanh V. Huynh
Justin Singer
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
jangel@herrick.com
eschmidt@herrick.com
hhuynh@herrick.com
jsinger@herrick.com

Hearing Date: September 15, 2010
at 1:30 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                             Chapter 11

FRESH HARVEST RIVER LLC.,                         Case No. 10-14814 (AJG)

                Debtors.
--------------------------------------------------------x

**DEBTOR'S MOTION, PURSUANT TO SECTIONS 105(a), 363,
AND 364 OF THE BANKRUPTCY CODE, RULE 4001(c) OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND
LOCAL RULE 4001-2, FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN
POST-PETITION FINANCING; (II) GRANTING POST-
PETITION LIENS AND SUPERPRIORITY CLAIMS; (III)
<u>SCHEDULING A FINAL HEARING</u>**

      Fresh Harvest River LLC ("<u>FHR</u>" or the "<u>Debtor</u>"), the debtor and debtor-in-possession herein, by its proposed counsel, Herrick, Feinstein LLP, as and for its motion (the "<u>Motion</u>") for entry of an interim order substantially in the form annexed hereto as <u>Exhibit "A"</u>, (the "<u>Interim Order</u>") and a final order (the "<u>Final Order</u>" and, together with the Interim Order, the "<u>DIP Orders</u>"): (i) authorizing the Debtor to enter into a debtor-in-possession financing facility (the "<u>DIP Facility</u>") with Catahama LLC (the

"DIP Lender" or "Catahama"); (ii) granting liens and superpriority administrative expense status in connection with the DIP Facility pursuant to 11 U.S.C. § 364; (iii) and scheduling a final hearing with respect to the relief requested herein pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully represent as follows:

## SUMMARY OF RELIEF REQUESTED

1. The Debtor requires the DIP Facility in order to timely meet its payroll obligations (due to be funded on September 15, 2010) and to fund its working capital requirements. This Motion is a standard request to approve a commercially reasonable lending facility between a debtor-in-possession and its pre-petition secured lender. The financing requested is relatively straightforward with no extraordinary provisions. Under the DIP Facility, Catahama, which holds an estimated pre-petition secured claim of $991,000, shall receive liens on *post-petition* inventory and receivables.

2. The Debtor submits that the proposed financing, which for the purposes of this Motion, is essentially a continuation of a pre-petition lending arrangement with Catahama, and is consistent with receivables based secured financing found in the industry generally.

3. The need for the financing is apparent, the terms are reasonable and the Debtor respectfully submits that the Motion should be granted.

4. Following is a summary of the material terms of the Debtor's request for authority, on an interim and final basis, to borrow under the DIP Facility**:**

**Borrower:**           Fresh Harvest River LLC

**DIP Facility**:        The total amount of the DIP Facility will be up to $250,000 to be
                         disbursed subject to a budget approved by the lender

**Lender:**             Catahama LLC

**Closing Date**: The Closing Date shall be the date on which the Bankruptcy Court shall have entered an interim order, in a form satisfactory to Catahama, provided that such interim order is not subject to a stay pending appeal.

**Fees:** None.

**Purpose:** On the Closing Date, the DIP Facility will be used for working capital and, in the first instance, to enable the Debtor to timely meet its wage and benefit obligations to its employees. Thereafter, the DIP Facility will be available for other working capital and general corporate purposes of the Debtor including the payment of post-petition expenses arising in the Debtor's Chapter 11 case.

**Maturity**: All obligations under the DIP Facility, accrued or otherwise, would be due and payable in full on the earliest of (i) nine months from the Closing Date; (ii) a continuing event of default by the Debtor; (iii) a sale of all or substantially all of the Debtor's assets under Section 363 of the Bankruptcy Code, or (iv) the Debtor's emergence from Chapter 11.

**Security**: The DIP Facility will be secured by a perfected security position on all <u>post-petition</u> accounts receivable and post-petition inventory. In this regard, the post-petition liens proposed will have no effect on any existing pre-petition liens First Commonwealth Bank ("First Commonwealth") may have. No elevation of Catahama's pre-petition secured debt, through cross-collateralization or otherwise, is proposed. Nor is there any provision that would limit the Court's power or discretion in any material way or that would interfere with the Debtor's exercise of its fiduciary duties.

In addition, the DIP Facility will be secured by a super-priority administrative claim under Section 507(b) of the Bankruptcy Code having priority over all other administrative claims, including, without limitation, those specified in Bankruptcy Code Sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, and 1114. The DIP Facility will not be secured (nor will the super-priority administrative claim be payable) by proceeds from avoidance actions under Chapter 5 of the Bankruptcy Code (other than those arising under Section 549 of the Bankruptcy Code), and will be subject to a Professional Expense Carve Out (defined below).

**Professional Expense Carve Out:** The Professional Expense Carve Out shall mean a carve out for (a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6); (b) professional fees and disbursements of professionals of the Debtor and of any committee appointed in

3

|   |   |
|---|---|
| | the Debtor's bankruptcy case (including the allowed reasonable expenses of the members of any such committee) in an amount not to exceed the sum of $100,000 in the aggregate; and (c) reasonable fees and expenses of a trustee under 11 U.S.C. § 726(b). |
| **Interest**: | Borrowings under the DIP Facility shall be at the Prime Rate plus 3.00% per annum. Interest will be due and payable quarterly in arrears. |
| **Default Pricing**: | The interest rate shall be increased by 2% per annum upon the occurrence of any event of default. |
| **Financial Covenants:** | The Debtor shall strictly perform in accordance with the Budget subject to the following permitted variances: (i) the Debtor's actual sales and cash receipts shall not be less than 80% of the projected amounts set forth in the Budget; and (ii) the Debtor's actual expenses and cash expenditures shall not be greater than 120% of the projected amounts set forth in the Budget. The covenants described in clauses (i) and (ii) above shall be tested each month pursuant to the Variance Report delivered by the Debtor to Catahama on the first Monday of each month for the immediately preceding month, beginning on October 1, 2010 on a cumulative basis during the period from the Petition Date to September 30, 2010. |
| **Defaults:** | The following shall constitute events of default: (a) conversion of the Debtor's chapter 11 proceedings to a case under chapter 7; (b) appointment of a trustee or examiner with expanded powers; (c) modification or reversal of any borrowing order without the consent of Catahama; (d) the entry of an order granting relief from stay to any other creditor which could have a material adverse effect on the Debtor; (e) the failure of the Debtor to obtain a final order from the Bankruptcy Court satisfactory in form and substance to the Lender, in its sole and exclusive discretion, authorizing the DIP Facility within thirty (30) days after the commencement of the bankruptcy case; and (f) the failure of the Debtor to make interest payments which failure is subject to a 10-day cure period from the date such interest payment became due. |
| **Conditions Precedent**: | Closing of the DIP Facility shall be conditioned upon entry of an interim order, reasonably acceptable to Catahama, authorizing and approving the DIP Facility. |
| **Governing Law**: | State of New York |
| **Extraordinary Provisions**: | None. |

HF 6055841v.1 #99999/1000

## INTRODUCTION

5. On September 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court, and an order for relief under section 301 of the Bankruptcy Code was entered in its case (the "Chapter 11 Case").

6. The Debtor has been authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the Chapter 11 Case.

## BACKGROUND

8. The Debtor is a manufacturer of quality food products whose operating facilities consist of a state-of-the-art manufacturing facility located in Dubois, Pennsylvania (the "Facility").

9. As of the Petition Date, the Debtor employs a total of 48 individuals.

10. Additional information about the Debtor's business and the events leading up to the Petition Date can be found in the Affidavit of Jack Gray Pursuant to Local Rule 1007-2 [Docket No. 2] (the "Gray Affidavit").

HF 6055841v.1 #99999/1000

## PREPETITION FUNDING OF THE DEBTOR'S OPERATIONS

11. Prior to January, 2010, the Debtor's business operations were financed under two $3 million lines of credit with First Commonwealth Bank ("First Commonwealth") - a revolving loan (the "Revolver") and a non-revolving loan (the "Non-Revolver" or, with the Revolver, the "Bank Lines"). Both the Revolver and the Non-Revolver appear to be secured.[1] According to the Debtor's books and records, the claims of First Commonwealth under the Bank Lines total approximately $4,295,393.

12. In or about January, 2010, the Debtor exhausted its borrowing availability under the Bank Lines. Thereafter, with First Commonwealth's blessing and encouragement, the Debtor began receiving financing from Catahama, secured by the Debtor's receivables. In order to effectuate the pre-petition Catahama financing, First Commonwealth agreed to release and/or subordinate its security interests in new receivables. Nevertheless, upon information and belief, both First Commonwealth and Catahama claim a first priority security interest in the Debtor's pre-petition receivables and inventory. Nothing in this Motion or the DIP Facility is intended to resolve or affect this dispute. Thus, at this time, the Debtor does not seek permission to utilize cash collateral. All funding for the Debtor's post-petition operations shall be provided under the DIP Facility.[2]

## THE REASONS WHY EMERGENCY INTERIM RELIEF IS REQUIRED

---

[1] The Debtor specifically reserves all rights to contest whether claims arising under either loan are secured as well as the nature, extent and priority of the purported liens.

[2] To the extent required, the Debtor reserves its rights, subject to agreement with Catahama, to seek further authorization for additional DIP financing.

13. The Debtor respectfully submits that without immediate access to the DIP Facility, immediate and irreparable harm to the Debtor would occur. Specifically, the Debtor needs immediate access to approximately $64,000 in order to meet its payroll obligations to employees which are scheduled to be funded on September 15, 2010. If the Debtor is unable to access financing to meet these payroll obligations, there is a substantial risk that it will begin to lose its employees which would substantially harm the Debtor's ability to reorganize or even continue its business operations in the short term.

14. The advances under the DIP Facility shall be provided in accordance with the terms of a budget (the "Budget") which has not yet been fully negotiated with Catahama. Once finalized and agreed upon, a copy of the Budget will be docketed prior to the emergency hearing scheduled to take place on September 15, 2010 at 1:30 p.m. In addition to payroll obligations, over the course of the next few weeks, and as will be set forth in the Budget, the Debtor will be either accruing or paying substantial amounts of non-deferrable obligations for which it will require financing under the DIP Facility.

15. The pre-petition financing arrangement which the Debtor negotiated with Catahama which, in large measure, is mirrored in the DIP Facility, was negotiated at arms' length and contains terms favorable to the Debtor. The DIP Facility was likewise negotiated with Catahama at arms' length and contains terms favorable to the Debtor such as the absence of any priming lien component. Based upon the Debtor's familiarity with the market for this type of loan, and the current state of the credit markets regarding debtor-in-possession loans, it believes that it is unlikely that there is any other lender, given the time limitations and exigencies, which could offer more favorable terms.

16. The Debtor's numerous customers, employees and vendors will all be beneficiaries of the DIP financing. The Debtor believes that if the relief sought herein is granted, it will provide the Debtor with the opportunity to pursue its business and to preserve its assets and business for the benefit of its creditors and estates.

## SPECIFIC RELIEF REQUESTED

17. This Motion is brought pursuant to sections 105, 363(b) and 364(c) of the Bankruptcy Code, and *inter alia*, Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Rule 4001-2. The Debtor seeks entry of the Interim Order authorizing the Debtor to borrow from Catahama pursuant to the terms of the Budget, and without material change, in the form annexed hereto and entry of a virtually identical Final Order.

18. Pursuant to sections 364(c)(1) and (2) of the Bankruptcy Code, this Court is authorized to permit a debtor to obtain post-petition credit entitled to superpriority administrative expense status and secured by a security interest in and lien on property of the estate, subject only to existing valid and perfected security interests and liens in a debtor's collateral, provided a debtor is otherwise unable to obtain unsecured credit allowable under 11 U.S.C. § 363(b)(1) as an administrative expense. .

19. The Debtor proposes to obtain post-petition credit from Catahama to pay employee obligations and for other ordinary and necessary operating expenses. The Debtor's proposed operational expenditures relate to the post-petition purchase of inventory, supplies and to pay for outside services and payroll and payroll-related expenses. At the current time, no material capital expenditures are contemplated.

20. As is demonstrated herein and in the Budget, and as will be shown at any evidentiary hearing held with respect to the Motion, the financing is necessary, appropriate and, indeed, essential to the Debtor's reorganization efforts. It is, moreover, given the Debtor's economic circumstances and the time constraints and general business conditions, the most favorable financing - if not the only financing - currently available to the Debtor. Absent the ability to borrow, the Debtor will be unable to support its operations and reorganize its business.

## NEED FOR INTERIM FINANCING

21. Pending a final hearing, the Debtor requests that this Court authorize interim financing in accordance with the requirements set forth in the Budget. Pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure and Local Rule 4001-2, the Court may authorize a debtor to obtain credit on an interim basis to the extent necessary to avoid immediate and irreparable harm to its estate pending a final hearing.

22. The need for interim financing is exemplified by the expenditures forecast in the motion for approval of employee obligations (the "Wage Motion") being filed concurrently herewith and in the Budget. As set forth in the Wage Motion, the Debtor pays its employees on a bi-weekly basis with funding for the first post-petition payroll due September 15, 2010. Because the Debtor will not be utilizing cash collateral (the interests in which are the subject of dispute), the only cash available to pay employee and other obligations will be from the DIP Facility. The Budget shall set forth the weekly expenditures required by the Debtor from the date of this Motion until such time as a final hearing can be held. The bulk of the disbursements represent payments of employee obligations and all are necessary for the continued operations of the Debtor. The Debtor

submits that the requirement of funding for immediate employee obligations and the items to be set forth in the Budget demonstrate its need for interim financing pending the final hearing.

## AUTHORITY FOR THE REQUESTED RELIEF

23. It is vital to the success of the Debtor's ongoing business activities and reorganization efforts that access to the DIP Facility borrowings be obtained immediately. Absent the immediate ability to borrow, the Debtor faces a palpable risk of severe disruption to its business and irreparable harm to its assets and ability to reorganize.

<u>The Debtor Satisfies the Requirements for Obtaining Credit Under Section 364(c) of the Bankruptcy Code</u>

24. The Debtor proposes to obtain financing under the DIP Facility by providing security interests and liens on post-petition inventory and receivables as set forth above pursuant to section 364(c) of the Bankruptcy Code. Section 364(c) of the Bankruptcy Code provides as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt --
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

25. Thus, the statutory requirement for obtaining postpetition credit under section 364(c) is a finding that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense." See In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must demonstrate a reasonable effort to obtain other sources of financing); In re Garland Corp., 6 B.R. 456, 461 n. 11 (1st Cir. BAP 1980) (secured credit under section 364 is authorized upon showing that unsecured credit cannot be obtained); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa.), modified on other grounds, 75 B.R. 553 (1987) (debtor must prove that it was unable to obtain unsecured credit pursuant to 11 U.S.C. § 354(b)).

26. Courts have articulated a three-part test to determine whether financing should be authorized under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

> (a) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;
>
> (b) the credit transaction is necessary to preserve the assets of the estate; and
>
> (c) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Ames Dept. Stores, 115 B.R. at 37-39; see also In re St. Mary Hospital, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); In re Crouse Group, Inc., 71 B.R. at 549.

27. Prior to the Petition Date, the Debtor sought alternative financing to the Credit Lines. The financing with the most favorable terms was the pre-petition financing by Catahama. The DIP Facility is essentially a continuation of the favorable pre-petition

financing provided by Catahama. Given this prior experience and given the current uncertainty in the credit markets, including the DIP loan markets, the Debtor determined that postpetition financing on an unsecured basis would be unobtainable.

28. If the Debtor is unable to obtain debtor-in-possession financing, it would be unable to operate its business during the pendency of this Chapter 11 Case. That, in turn, would place the Debtor's ability to reorganize in serious jeopardy.

29. Lastly, given the Debtor's current circumstances coupled with the uncertainty credit environment, the Debtor believes that the terms of the DIP Facility, which largely mirror the terms of the pre-petition credit facility with Catahama, are fair, reasonable and adequate. Based on the foregoing, the incurrence of debt under the DIP Facility and the granting of super-priority administrative claims is appropriate under the circumstances.

30. The proposed terms of the DIP Facility are fair, reasonable and adequate given the credit conditions that exist in today's market. There is no obligation to pay fees, no requirement of a priming lien, no rollup of pre-petition indebtedness, no restrictions on contesting pre-petition claims and no extraordinary default provisions. The terms and conditions of the DIP Facility were negotiated by the parties in good faith and at arm's length, and are fair and reasonable under the circumstances. Accordingly, Catahama should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of such agreement.

31. Bankruptcy courts consistently defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. See e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re

Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonal business); Ames Dep't Stores, Inc., 115 B.R. at 40 ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

32. The financing under the DIP Facility is the sole means of providing the Debtor with liquidity and thus will enable the Debtor, inter alia, (a) to minimize disruption to the Debtor's business by paying on-going expenses, (b) preserve and maximize the value of the Debtor's assets for the benefit of all the Debtor's creditors, and (c) avoid immediate and irreparable harm to the Debtor, its creditors, its businesses, its employees, and its assets.

## NOTICE

33. No trustee, examiner or statutory creditors' committee has been appointed in this Chapter 11 Case. Notice of this Motion has been provided by providing a copy of the Motion to (i) the Office of the United States Trustee; (ii) counsel to Catahama; (iii) counsel to the First Commonwealth Bank; (iv) those creditors of the Debtor holding the twenty-five (25) largest unsecured claims against the Debtor's estate; and (vi) all entities which have filed and served upon the Debtor a notice of appearance and request for service of documents. The Debtor respectfully submits that no other or further notice need be provided.

34. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests the Court (i) to enter an Interim Order substantially in the form annexed hereto as Exhibit "A" (a) authorizing the Debtor borrow under the DIP Facility; (b) granting Catahama liens and super-priority claims; (c) scheduling a final hearing to consider the relief sought herein on a final basis; (d) granting any other appropriate form of relief; and (ii) immediately following the final hearing, enter a final order on substantially the same terms as the interim order.

Dated: New York, New York
      September 13, 2010

    HERRICK, FEINSTEIN LLP
    *Proposed Attorneys for the Debtor and Debtor-in-Possession*

    By: */s/ Frederick E. Schmidt, Jr.*
        Joshua J. Angel
        Frederick E. Schmidt, Jr.
        Hanh V. Huynh
        Justin B. Singer
    2 Park Avenue
    New York, New York 10016
    (212) 592-1400
    (212) 592-1500 (fax)
    jangel@herrick.com
    eschmidt@herrick.com
    hhuynh@herrick.com
    jsinger@herrick.com

# EXHIBIT "A"

# PROPOSED INTERIM ORDER